NO. 12-09-00151-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

DEREK BARBEE, GUARDIAN OF            
§                   APPEAL FROM THE 273RD

THE PERSON AND ESTATE OF

RICKY BARBEE,

APPELLANT

 

V.                                                                    
§                     JUDICIAL DISTRICT COURT OF

 

                        

TAMMY BARBEE,   

APPELLEE                                                   §                      SHELBY
COUNTY, TEXAS







MEMORANDUM
OPINION

            Derek
Barbee, as guardian of the person and estate of his father, Ricky Barbee,
appeals from the final divorce decree and protective order rendered by the
trial court in Tammy Barbee’s suit for divorce from Ricky.  In four issues,
Derek contends the evidence is legally and factually insufficient to support
the verdict, the protective order is void, Tammy lacked authorization to file
suit against Ricky, and the trial court erred in admitting certain evidence. 
We affirm.

 

Background

            Tammy
and Ricky were married on June 2, 1978, and divorced in 1990.  Tammy testified
that Ricky was in and out of her life, as she continued to raise their three
children, until 1995. On October 7, 1995, Ricky suffered a serious head
injury.  They began to live together again, and Tammy took care of Ricky while
he recuperated.  Tammy was appointed Ricky’s guardian on February 19, 1997. 
After years of Ricky’s affairs and abuse, Tammy filed for divorce on July 18,
2008, claiming their informal marriage had become insupportable.  She later
resigned as guardian.  Derek was appointed guardian for his father and appeared
on his behalf in the divorce suit.  After a trial before the court, the court
found that an informal marriage existed between Tammy and Ricky, ordered that
they are divorced, and divided their property and debts.  On the same day, the
court signed a final protective order prohibiting Ricky from committing certain
acts.  Derek appeals those orders on his father’s behalf.

 

Sufficiency of the Evidence

            In
his first issue, Derek contends the evidence is legally and factually
insufficient to support the trial court’s finding that an informal marriage
existed between Tammy and Ricky.  He argues that Ricky, deemed incompetent by a
guardianship court, is not competent to enter into an informal marriage and,
that as Ricky’s guardian, Tammy was required to obtain court approval of the
marriage before Ricky could enter into it.  He also argues there was no
agreement to be married and neither Ricky nor Tammy held themselves out to the
public as being married.  Derek also points out that Tammy signed several
documents indicating she was single.

Standard
of Review

When
the trial court acts as a fact finder, its findings are reviewable for legal
and factual sufficiency of the evidence by the same standards applicable in
reviewing the sufficiency of the evidence supporting a jury’s finding.  Anderson
v. Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  A party who
challenges the legal sufficiency of the evidence to support an issue on which
it did not have the burden of proof at trial must demonstrate on appeal that
there is no evidence to support the adverse finding.  Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983).  In reviewing for legal
sufficiency of the evidence, we consider the evidence in the light most
favorable to the verdict, indulging every reasonable inference in favor of the
verdict.  See Autozone, Inc. v. Reyes, 272 S.W.3d 588, 592 (Tex.
2008) (per curiam); Associated Indem. Corp. v. CAT Contracting, Inc.,
964 S.W.2d 276, 286 (Tex. 1998).  To determine whether legally sufficient
evidence supports a challenged finding of fact, the reviewing court must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.  See City of Keller v. Wilson,
168 S.W.3d 802, 807 (Tex. 2005).  The final test for legal sufficiency must
always be “whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review.”  Id. at 827.

We
sustain a legal sufficiency or “no evidence” challenge when the record
discloses one of the following situations: (1) there is a complete absence of
evidence of a vital fact, (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence of a vital fact, (3) the
evidence offered to prove a vital fact is no more than a mere scintilla, or (4)
the evidence conclusively establishes the opposite of the vital fact.  Id.
at 810.  Anything more than a scintilla of evidence is legally sufficient to
support the finding.  See Cont’l Coffee Prods. Co. v. Cazarez,
937 S.W.2d 444, 450 (Tex. 1996).  

            If a
party is attacking the factual sufficiency of the evidence to support an
adverse finding on an issue on which the other party had the burden of proof,
the attacking party must demonstrate that there is insufficient evidence to
support the adverse finding.  Westech Eng’g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.–Austin 1992, no
writ).  In addressing a factual sufficiency of the evidence challenge, an
appellate court must consider and weigh all of the evidence.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986).  The verdict should be set aside
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Id.  However, this court is not a fact
finder, and we may not pass upon the credibility of the witnesses or substitute
our judgment for that of the trier of fact, even if a different answer could be
reached upon review of the evidence.  Durban v. Guajardo, 79
S.W.3d 198, 208 (Tex. App.–Dallas 2002, no pet.)

            Appellate
courts review conclusions of law de novo.  BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  An appellant may not
challenge a trial court’s conclusions of law for factual insufficiency; however
the reviewing court may review the trial court’s legal conclusions drawn from
the facts to determine their correctness.  Id.  Conclusions of
law will not be reversed unless they are erroneous as a matter of law.  Tex.
Dep’t of Pub. Safety v. Stockton, 53 S.W.3d 421, 423 (Tex. App.–San
Antonio 2001, pet. denied).

Applicable
Law

            The
three elements of an informal marriage are (1) an agreement to be married, (2)
after the agreement, living together in Texas as husband and wife, and (3)
representing to others in Texas that they were married.  Tex. Fam. Code Ann. § 2.401(a)(2)
(Vernon 2006).  A proponent may prove an agreement to be married by direct or
circumstantial evidence.  Russell v. Russell, 865 S.W.2d 929, 933
(Tex. 1993).  Proof of cohabitation and representations to others may
constitute circumstantial evidence of an agreement to be married.  Id. 
The statutory requirement of “representing to others” is synonymous with the
judicial requirement of “holding out to the public.”  Lee v. Lee,
981 S.W.2d 903, 906 (Tex. App.–Houston [1st Dist.] 1998, no pet.).  “Holding
out” may be established by conduct and actions of the parties.  Id.

Discussion

            In
its order appointing Tammy guardian, the probate court found Ricky to be
incompetent.  At trial, Derek attempted to convince the trial court that no
agreement to be married could have been entered into because Ricky did not have
the mental capacity to enter into a contract.  A contract with a person of
unsound mind is voidable, not automatically void.  See Williams v.
Sapieha, 94 Tex. 430, 433, 61 S.W. 115, 116 (1901).  The burden was on
Derek to establish this defense.  See Burleson v. Morse, 172 S.W.2d
361, 363 (Tex. Civ. App.–Galveston 1943, writ ref’d w.o.m.).  Derek asked the
trial court to file findings of fact and conclusions of law, but he did not
request specific findings or conclusions.  The trial court found that Tammy and
Ricky agreed they were married, and it concluded that Tammy and Ricky entered
into an informal marriage.  The court made no finding or conclusion regarding
Derek’s defense of incapacity.  

Rule
299 of the Texas Rules of Civil Procedure provides that the trial court’s findings
of fact form the basis of the judgment on all grounds of recovery and defense
embraced therein.  Tex. R. Civ. P.
299.  Further, on appeal, the judgment will not be presumed to be correct based
on a defense when no element of that defense has been found by the trial
court.  Id.  A party asserting an affirmative defense in a trial
before the court must request findings in support of such a defense in order to
avoid waiver on appeal.  Sears, Roebuck & Co. v. Nichols, 819
S.W.2d 900, 907 (Tex. App.–Houston [14th Dist.] 1991, writ denied).  Where the trial
court files findings that do not establish any element of the ground of
defense, the party relying upon that defense must file a request for additional
findings to avoid waiver of that defense on appeal.  Id.  Derek
did not request additional findings on his defense of incompetence.  His
failure to request findings on his defense of incompetence therefore results in
waiver of the issue.  Id.

Tammy
explained that she was married to Ricky from 1978 until 1990.  She specifically
testified that they began to live together again in 1995 and have been married
since then.  She said that she has represented to everyone that they were
married, sometimes in Ricky’s presence, and he did not deny it.  Tammy
testified that they had an agreement to be married and represented to the
public that they were married.  She explained that she took care of him after
his accident.  She loved him and wanted to be there.  She went with him to his
psychological evaluation in 1996.  That evaluation refers to Tammy as Ricky’s
wife.  She also presented a release of lien signed before a notary in August
1996 identifying her as Ricky’s wife.  In 1997, Tammy received $150,000.00 in
settlement of her claims arising out of Ricky’s accident, apparently based on
her status as his wife.

On
cross examination, Tammy said she lived as Ricky’s wife and felt married in her
heart.  She also stated that she and Ricky had a joint checking account.

Joann
Williams, who “was seeing” Ricky from 2004 until 2008, explained that they only
saw each other out of town.  She also testified that she found out he was
married to Tammy, after he broke up with her when one of Tammy’s friends told
her.

Jaqueline
Swindle testified that, during 2004 and 2005, she had a sexual relationship
with Ricky.  He told her he was married, and they always met out of town.

Clarence
Weaver testified that he is Tammy’s father and that Ricky is a good friend of
his.  He said that Ricky has represented to him that he and Tammy were married,
and they lived together as husband and wife.

Johnny
Lewis testified that Tammy was the treasurer and piano player of a church where
he was the pastor.  He has known her since 1999.  He testified that Tammy said
Ricky was her husband and their reputation in the church was that they were
married.

Marilyn
Lewis is a lifelong friend of both Tammy and Ricky.  She testified that Tammy
and Ricky were married and that Tammy referred to herself as Ricky’s wife when
she went back to him after the divorce.  According to Marilyn, Tammy did not
make a secret of being married and Ricky knew Tammy represented herself as his
wife.  She testified that Tammy and Ricky were perceived in the community as
husband and wife.  Specifically, she explained that everyone she has been
around always “felt like” they were married.  

There
is evidence that Ricky knew Tammy considered them to be married and he did not
correct her.  Although Ricky had girlfriends during the pertinent time period,
he told one of his girlfriends that he was married and he saw two of them only
at out of town locations.  The trial court was entitled to infer from this
evidence that Ricky believed he was married.  See Associated Indem. Corp.,
964 S.W.2d at 286.

The
record contains evidence that would enable a reasonable and fair-minded trier
of fact to find that Tammy and Ricky agreed to be married, lived together in
Texas as husband and wife, and represented to others in Texas that they were
married.  See City of Keller, 168 S.W.3d at 827.  Thus, the
evidence is legally sufficient to support the trial court’s conclusion that an informal
marriage existed.  See id.  

In
reviewing Derek’s factual sufficiency complaint, we consider all of the
evidence.  See Cain, 709 S.W.2d at 176.  Joann Williams testified
that Ricky told her he was not married.  Considering the fact that she also
said they only saw each other out of town, the trial court could have concluded
that Ricky lied to her about not being married and saw her only in other towns
to avoid detection.

Carrie
Edmonds testified that Ricky has been her boyfriend since Tammy and Ricky
separated.  However, she thought they were already divorced and did not know
anything about an informal marriage.  She thought Tammy stayed in the same home
as Ricky only as a guardian and that the legal proceedings involved only “a
property thing.”  The trial court could have determined that Ricky was not
entirely candid when he explained his personal situation to Edmonds.

Tammy
admitted that she had an affair with someone and, in April 2008, applied for a
marriage license in Polk County swearing that she was “not presently married.” 
She explained that she did not know how to end an informal marriage.  Also, she
was hurt and confused at the time and she wanted Ricky to feel what she had felt
because of his affair with Williams.  She said that she and Ricky celebrated
their thirtieth anniversary in 2008 but, at the time, Ricky was having an
affair with Edmonds.  In her application for appointment of guardian, she
identified herself as “the one who cares for” Ricky.  Tammy denied knowing what
her duties as guardian entailed, explaining that she thought it was set up so
she could make medical decisions for Ricky.  Her application to be appointed
guardian states that Ricky is in need of a guardian to handle his financial and
legal affairs and to assure that his medical and day to day needs were met. 
However, Tammy maintained that, during the time she was Ricky’s guardian, she
lived as his wife.

In
2007, Tammy filed her federal tax return as “single.”  In prior years, after
the 1990 divorce, she filed as “head of household.”  An accountant testified
that only an unmarried person can file as “head of household.”  Further, Tammy
testified that she helped Ricky prepare his 1995 tax return and he filed as
“single.”  In 2002, Tammy signed a deed to some property as a single woman. 
However, Derek introduced many other documents generated between 1996 and 2003
that did not identify Tammy as a single woman.

There
is evidence that Tammy agreed to be married to Ricky, lived with Ricky as his
wife, and held herself out to the community as being married to Ricky.  The
community, including her friends, her father, and her church, considered them
married. The trial court was entitled to disregard the fact that Tammy
identified herself as single in certain documents.  See Lee, 981
S.W.2d at 906; In re Giessel, 734 S.W.2d 27, 31 (Tex. App.–Houston
[1st Dist.] 1987, writ ref’d n.r.e.) (Representations in tax returns and other
documents that a party was single go to the weight of the evidence; they do not
negate a marriage as a matter of law.).  Thus, declarations in the various
legal documents executed by Tammy to the effect that she was single do not
negate the marriage relationship shown by the evidence to have existed at the
time.  See DeBeque v. Ligon, 292 S.W. 157, 158 (Tex.
Comm’n App. 1927, holding approved).

While
Ricky had girlfriends during the time of the alleged informal marriage, one of
Ricky’s girlfriends said Ricky told her he was married.  Further, the fact that
Ricky met two of his girlfriends only at out of town locations indicates he did
not want to be seen.  

Considering
all of the evidence, the trial court’s determination that an informal marriage
existed between Tammy and Ricky is not so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.  See Cain, 709
S.W.2d at 176.  The evidence is legally and factually sufficient to support the
trial court’s finding that an informal marriage existed between Tammy and Ricky.[1] 
We overrule Derek’s first issue.

 

Protective Order

In
his second issue, Derek contends the final protective order signed by the trial
court is either void or voidable.  He argues that Family Code Section 84.001
requires the trial court to set a hearing within fourteen days after the
application for protective order is filed, which was not done in this case. 
Derek cites to no cases in support of his contention and implicitly argues that
this provision is jurisdictional.  Tammy filed her application in October 2008,
and the final protective order was signed May 6, 2009.

On
the filing of an application for a protective order, the court shall set a date
and time for the hearing unless a later date is requested by the applicant.  Tex. Fam. Code Ann. § 84.001 (Vernon
2008).  Except as provided by Section 84.002, which is not applicable here, the
court may not set a date later than the fourteenth day after the date the
application is filed.  Id.  The Family Code does not contain
specific consequences for noncompliance with the fourteen day limitation.  The
purpose of the provision, like similar statutes, appears to be to ensure prompt
resolution of the applicant’s request.  See In re E.D.L., 105 S.W.3d
679, 687-88 (Tex. App.—Fort Worth 2003, pet. denied).  Further, the purpose of
the statute would not be served if noncompliance resulted in dismissal for want
of jurisdiction.  See id.  We conclude that the final protective
order, even though signed six months after the application was filed, is
neither void nor voidable merely because the hearing was not held within
fourteen days of the date the application was filed.  We overrule Derek’s
second issue.

 

Authorization by Guardianship Court

In
his third issue, Derek contends that Tammy, who filed her original petition for
divorce at a time when she was Ricky’s legal guardian, could not bring suit for
divorce against Ricky, her ward, without the prior authorization of the court
that appointed her as his guardian.  Although Ricky had legal counsel who filed
an answer and a counter petition on his behalf, no motion to dismiss was ever
filed.  The appropriateness of filing suit against one’s ward was never raised
in the trial court and was therefore waived.  See Tex. R. App. P.  33.1(a); Edwards
v. Tex. Emp’t Comm’n, 936 S.W.2d 462, 466 (Tex. App.–Fort Worth 1996,
no writ).  Further, once Tammy resigned as guardian and Derek was named
guardian for Ricky, the issue became moot.  We overrule Derek’s third issue. 

 

Admissibility of Evidence

            In
his fourth issue, Derek contends the trial court erred in admitting into
evidence two obituaries that had been published in on online newspaper called
ShelbyCountyToday.com.  He argues that the source of the information contained
in the obituaries indicating that Tammy is Ricky’s wife could not be confirmed
and therefore the obituaries are hearsay.

            We
review the trial court’s evidentiary rulings for abuse of discretion.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  To get a
reversal of a judgment based on the trial court’s error in admitting evidence,
the complaining party must show that the trial court committed an error and the
error was reasonably calculated to cause and probably did cause rendition of an
improper verdict.  Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d
394, 396 (Tex. 1989).  In reviewing a cause tried before the court, the
appellate court generally assumes that the trial court disregarded any
incompetent evidence.  Gillespie v. Gillespie, 644 S.W.2d 449,
450 (Tex. 1982).  The admission of such evidence will generally not require
reversal of the judgment when there is competent evidence to authorize its
rendition.  Id.

            Hearsay
is an out of court statement offered as evidence to prove the truth of the
matter asserted.  Tex. R. Evid.
801(d).  Generally, Texas courts consider newspaper articles inadmissible
hearsay.  Austin v. Houston Lighting & Power Co., 844 S.W.2d
773, 791 (Tex. App.–Dallas 1992, writ denied).  In some instances, the hearsay
rule does not bar the admissibility of news reports used to show surrounding
circumstances and public perceptions of the subject matter covered by the
article.  Id. at 791.

            Rita
Hughes testified that she owns an online newspaper known as
ShelbyCountyToday.com.  She explained that she usually receives information for
obituaries from the funeral home.  She retypes the information and posts it. 
She does not know who actually provides the information and does not attempt to
verify it.  The two exhibits Derek complains of are obituaries posted April 30,
2007 and July 30, 2007.  Both included a reference to “Ricky Barbee and wife
Tammy of Center” as survivors of the decedent.  Tammy introduced the obituaries
to prove her reputation in the community as Ricky’s wife.  Therefore, they were
offered to prove the truth of the matter asserted.  Because Tammy had the
burden to prove that they represented to others that they were married, this is
not a situation covered by the exception allowing a news report to show the
surrounding circumstances of the article’s subject matter.  See King v.
City of Dallas, 374 S.W.2d 707, 711-12 (Tex. Civ. App.–Dallas 1964,
writ ref’d n.r.e.).  Thus, the trial court abused its discretion in admitting
the two obituaries.  However, we assume the trial court disregarded this
evidence.  See Gillespie, 644 S.W.2d at 450.  Further, the
admission of the obituaries was not calculated to cause and probably did not
cause the rendition of an improper judgment because if that evidence is
excluded, there remains sufficient evidence to support the trial court’s
determination that an informal marriage existed between Tammy and Ricky.  Id. 
We overrule Derek’s fourth issue.

 

Conclusion

            The
evidence is legally and factually sufficient to support the trial court’s
determination that Tammy and Ricky had an informal marriage.  Derek has raised
no reversible error.  

            We affirm
the trial court’s final divorce decree and final protective order.

 

                                                                                                Brian Hoyle

                                                                                          
              Justice

 

 

 

Opinion delivered October 20, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1]
As explained in our discussion of Derek’s fourth issue, the trial court
erroneously allowed Tammy to present evidence of two online obituaries that
identified her as Ricky’s wife.  We do not consider that evidence for purposes
of our sufficiency review.