## SMITH v. THORNHILL.
No. 1109—5363.

Commission of Appeals of Texas, Section B.
March 12, 1930.

598

Geo. T. Burgess, of Dallas, for plaintiff in error.

Carter & Berwald, of Dallas, for defendant in error.

SHORT, P. J.

The defendant in error, as next friend for Minnie Lee Bovender, instituted this suit against the plaintiff in error, alleging, in substance, that while Minnie Lee Bovender, a widow, is the owner of certain property in Dallas county, Tex., that she had executed a certain promissory note and also a certain deed of trust on said real property to secure the payment of said note to the plaintiff in error, who had delivered either to her, or to others for her apparent benefit, in return for the execution and delivery of the promissory note and deed of trust, $1,500 in cash, but at the time Minnie Lee Bovender executed these instruments she was non compos mentis, and that she did not, at said time, have sufficient mental capacity to execute the same.

In addition to pleading to the jurisdiction of the court, to hear and determine the controversy, and interposing a general demurrer and special exception, the plaintiff in error denied in detail each and every allegation of the plaintiff's petition, and pleaded certain facts in addition to the effect that certain parts of the $1,500 was paid to certain other parties at the request of Minnie Lee Bovender, that the balance was paid to her and no part of which money had been tendered by the defendant in error, by reason of which the plaintiff in error asserted the right to have the petition of the defendant in error dismissed, in that it failed to state a cause of action.

The general and special exceptions to the petition having been overruled, and a jury having been impaneled, one issue only was submitted, inquiring of the jury whether, from the evidence introduced, Minnie Lee Bovender had sufficient mental capacity, at the time she executed the note and deed of trust, to execute the same, the jury answering in the negative. Whereupon judgment was rendered canceling the note and deed of trust. The motion for new trial having been presented and overruled, notice of appeal was prosecuted to the Court of Civil Appeals, and, the case having been transferred from the Fifth to the Ninth District, the Court of Civil Appeals of the Ninth District affirmed the judgment of the trial court. 12 S.W.(2d) 625.

The petition of the defendant in error affirmatively shows that Minnie Lee Bovender had never been adjudicated to be insane, and of course was without a legal guardian. The petition also inferentially shows that the plaintiff in error delivered to Minnie Lee Bovender and to others, with her consent, $1,500 in cash, in good faith, without fraud or imposition, and without any notice of her alleged infirmity. The record also affirmatively shows, without contradiction, that all the testimony introduced by the defendant in error was given by witnesses, who were not present at the time the transaction, under investigation, occurred. The petition of the defendant in error did not contain any allegation either that the said Minnie Lee Bovender had no part of the $1,500, or that no part of this sum had been used for necessaries or for the benefit of her estate. Nor did the petition allege a tender of the $1,500 or any part thereof.

With the record in this condition, the plaintiff in error, in addition to a general demurrer to the petition, presented a request to the court to instruct the jury to return a verdict in her favor. This request was refused. The special issue presented to the jury reads: "At the time Minnie Lee Bovender executed the note for $1,500.00, dated October 2, 1924, payable to Parlee R. Smith and deed of trust upon certain property to secure the same, * * * did Minnie Lee Bovender have sufficient mental capacity to execute said note and deed of trust." The trial court, in explanation of the language used in the issue given, gave in charge to the jury the following: "To aid you in answering this question you are instructed that by the term 'mental capacity' is meant that at the time of executing the note and deed of trust that the said Minnie Lee Bovender must have had sufficient mind and memory to intelligently understand the nature and effect of her act in executing the note and deed of trust upon her property."

The plaintiff in error excepted to this explanation of the term "mental capacity," claiming that it imposed a greater burden upon the defendant than the law required, and.

required a greater degree of mind and memory and of mental capacity than was required by the law, alleging that the law did not require her to understand the nature and effect of her act in executing the note and deed of trust, and did not require that she should *intelligently* understand the nature and effect of her acts, in executing said note and deed of trust, but required only that she should have sufficient mental capacity to *reasonably* understand the same. The plaintiff in error also excepted to the charge on the alleged ground it did not instruct the jury that they were to consider only the condition of Minnie Lee Bovender at the time she executed the deed of trust and note as to whether at that time she had mental capacity to *reasonably* understand the nature of the business she was engaged in, and the effect of her act. Due exception was taken to the refusal of the court to sustain these objections, and the assignments of error, originally presented in the Court of Civil Appeals, have been represented in the application for the writ of error, as well as assignments of error based upon the action of the Court of Civil Appeals in sustaining the action of the trial court in overruling the general demurrer and refusing to give the instructed verdict requested. Several other assignments of error are presented in the Court of Civil Appeals and represented here, but an enumeration of them is deemed unnecessary by us.

It is the contention of the plaintiff in error that, where a contract with an insane person has been entered into, in good faith, without fraud or imposition, for a fair consideration, without notice of the infirmity and before an adjudication of insanity, and where it had been executed in whole or in part, it will not be set aside, unless the parties can be restored to their original position. It is also the contention of the plaintiff in error that substantially all of the testimony introduced, in support of the allegations of the petition, did not have any probative force tending to show the want of mental capacity of Minnie Lee Bovender *at the time* she executed the note and deed of trust, for the reason that this testimony related to a time either prior or after the identical time when the note and deed of trust were executed.

The general demurrer was urged, and the request for an instructed verdict was presented upon the theory that there was no allegation in the petition and no testimony introduced by the defendant in error, that Minnie Lee Bovender did not have in her possession the money paid for the execution of the note and deed of trust, nor that the money had not been expended by her in the purchase of necessities, or for the benefit of her estate, since the record also showed that Minnie Lee Bovender had not been adjudicated to be a lunatic, and further showed that no fraud or imposition had been practiced upon her, and that the note and deed of trust were executed for a fair consideration without notice of any insanity on the part of Minnie Lee Bovender, such as is alleged to have existed.

■■ The disputed issue of fact presented for the determination of the jury was whether Minnie Lee Bovender had sufficient mental capacity to execute the note and deed of trust *at the time* they were executed by her. The burden of establishing by competent testimony and by a preponderance of the evidence that Minnie Lee Bovender did not have such capacity *at said time* rested upon the defendant in error, in view of the fact Minnie Lee Bovender had not been adjudicated, previous to that time, to have been wanting in that capacity. The rule is that, if a person has been regularly adjudicated to be of unsound mind, and if the affairs of such person are being actively managed by a legally authorized guardian, the deed of such person of unsound mind, executed at a time after such adjudication is presumed, prima facie, to be void, subject of course to the probative force of testimony sufficient to show that *at the time* of the execution of the instrument the adjudicated lunatic had been restored to his right mind, but the rule also is that, when the deed of a person of unsound mind has been executed, when there has been no adjudication of unsoundness, the presumption is that the person executing the deed is of sound mind, and the act of execution is not void, but only voidable, by pleading and proving the fact to be that *at the time* of the execution of the instrument the person executing it did not have sufficient mind and memory to understand the nature and effect of his act in executing it.

■ A contract is a deliberate engagement between competent parties to do or abstain from doing some act for a sufficient consideration. The word "competent," as used in this definition, and with relation to the question of fact involved in this case, means that both of the parties to the agreement, *at the time* it was made, were sane. In the absence of an adjudication, that one of the parties was insane at the time, the law presumes that both were sane. So where a person, not under adjudication of lunacy, attempts to avoid liability, under his act, on the ground of insanity, the burden of proving this condition of mind rests upon the person claiming the benefit of it. When this has been done, in a legal way, and the fact of insanity has been established by a verdict of the jury, supported by sufficient testimony, one of the elements of a legal contract is thus shown to have been wanting. The legal effect of such a conclusion is to establish the fact that no legal contract had been made, in that one of the parties thereto was incompetent to make such contract. Where there has been an adjudication of lunacy, the fact of incompetency of any of the parties is presumed to exist.

Where there has been no such adjudication, this assumption does not prevail, but the presumption that the parties were competent must be overturned, and, when overturned, the legal effect of the fact of incompetency relates back and vitiates the transaction from the beginning, however, apparently, sufficient the instrument may be to pass the title to the thing attempted to be conveyed. That which is void is without vitality or legal effect. That which is voidable operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared.

In the case of Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115, in answering a certified question whether a power of attorney from a non compos mentis at the time of its execution was void or voidable, and if voidable, whether it would be set aside in the absence of an offer to return the purchase money or otherwise place the person in status quo, Associate Justice Brown, speaking for the Supreme Court, held that a power of attorney by one of unsound mind, in the conveyance of land by authority of such power, was not void, being merely voidable, but that a lunatic, in an action to set aside his voidable conveyance, was not required to return the consideration received therefor, in the absence of proof that he still had it in his possession or had spent it for necessaries. The decision in Williams v. Sapieha, supra, has never been questioned by any subsequent decision rendered by the Supreme Court but has been followed by all the Courts of Civil Appeals wherever a similar question has arisen. Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115; Donaldson v. Meyer et al. (Tex. Com. App.) 261 S. W. 369; Shaw v. Gillespie (Tex. Civ. App.) 270 S. W. 1043; Wisdom v. Peek (Tex. Civ. App.) 220 S. W. 210; Rowan v. Hodges (Tex. Civ. App.) 175 S. W. 847; Ramirex v. Lasater (Tex. Civ. App.) 174 S. W. 706; Ferguson v. Fitze (Tex. Civ. App.) 173 S. W. 500; Brown v. Brenner (Tex. Civ. App.) 161 S. W. 14; Mitchell v. Inman (Tex. Civ. App.) 156 S. W. 290; Barnes v. McCarthy (Tex. Civ. App.) 132 S. W. 85, 87; Lewis v. Blount (Tex. Civ. App.) 139 S. W. 7; Gray v. Allen (Tex. Civ. App.) 269 S. W. 510; Houghton v. Rice, 15 Tex. Civ. App. 561, 40 S. W. 349, 1057; Jones v. Meyer (Tex. Civ. App.) 248 S. W. 777, 778. Previous to the decision in the case of Williams v. Sapieha, supra, opinions to a similar effect were rendered by the Supreme Court of Texas in Elston v. Jasper, 45 Tex. 409; Askey v. Williams, 74 Tex. 294, 11 S.W. 1101, 5 L. R. A. 176; Ferguson v. Ry. Co., 73 Tex. 344, 11 S. W. 347, and by the Supreme Court of the United States in Irvine v. Irvine, 9 Wall. 626, 19 L. Ed. 800.

The reason upon which the doctrine is founded that a contract of a person of unsound mind, when the fact of unsoundness of mind has been properly and duly established, will be set aside, is discussed by the Supreme Court of the United States in Dexter v. Hall, 15 Wall. 9, 20, 21 L. Ed. 73, wherein that court used the following language: "Looking at the subject in the light of reason, it is difficult to perceive how one incapable of understanding, and of acting in the ordinary affairs of life, can make an instrument the efficacy of which consists in the fact that it expresses his intention, or, more properly, his mental conclusions. The fundamental idea of a contract is that it requires the assent of two minds. But a lunatic, or a person non compos mentis, has nothing which the law recognizes as a mind, and it would seem, therefore, upon principle, that he cannot make a contract which may have any efficacy as such."

Since the record shows that the only testimony outside of that of expert witnesses, relating to Minnie Lee Bovender's mental condition on the day of the execution of the note and the deed of trust, was testimony introduced by the plaintiff in error, all of which was to the effect that at that time, apparently, she was sane, and that substantially all of the testimony introduced by the defendant in error related to a time either prior or or subsequent to the time when the note and deed of trust were executed, the plaintiff in error contends that there was not any evidence, having probative force, which could relate to her mental condition at the identical time when the transaction occurred. The question presented to the jury for their decision had reference to the mental condition of Minnie Lee Bovender at the very time she executed the note and deed of trust, but in order to ascertain the mental condition of Minnie Lee Bovender, at the time she executed the note and deed of trust, the court properly received evidence of the condition of her mind for a reasonable period both before and after that time. Williams v. State, 37 Tex. Cr. R. 348, 39 S. W. 687; 32 C. J. p. 760, par. 564. The admissibility of this character of testimony, it seems to us, is without question. The weight to be given to it, when admitted, is the exclusive province of the jury in solving the real issue involved, which was the mental capacity of Minnie Lee Bovender at the very time she executed the note and deed of trust to understand the nature and consequences of her act. In Jackson v. Watson, 10 S.W.(2d) 977, 981, this Section of the Commission, speaking through Judge Leddy, on this subject, said: "Even though the record was silent as to Jackson's mental condition, so far as the personal observation of any witness was concerned, on the very date the deed [of trust] was executed, the evidence as to his condition only a short time prior thereto and at the time of the trial was amply sufficient to justify the deduction made therefrom by the jury in its findings on this issue." In this connection it may be stated

that the plaintiff in error contends that the testimony showed that Minnie Lee Bovender had lucid intervals, and that, in the absence of testimony, showing that at the time she executed the note and deed of trust she did not have one of these lucid intervals, an instructed verdict in favor of the plaintiff in error should have been given. The reverse of this contention is held also in Jackson v. Watson, supra, wherein it is said: "The Court of Civil Appeals seems to have concluded that as there was testimony showing Jackson had lucid intervals, no presumption of the continuance of the unsound condition of his mind shown shortly prior to the execution of the deed would be indulged. We do not agree with the proposition that the question is one of presumption as to Jackson's mental condition at the time the deed was executed, but rather is one involving the right of the jury to draw the conclusion that Jackson's mind was unsound at the very time the deed was executed from the facts showing his mental condition before and after such time, and the probable effect on his mind of the incurable disease from which he was suffering." Even if it should be conceded that the testimony shows that Minnie Lee Bovender had lucid intervals, though the Court of Civil Appeals finds to the contrary, yet following the rule laid down in Jackson v. Watson, supra, on this subject, we are of the opinion that the mere fact that she had such lucid intervals at times does not establish, as a matter of law, under the testimony, that one of these lucid intervals existed at the time the note and deed of trust were executed. The issue presented to the jury in the charge of the court had reference to the mental condition of Minnie Lee Bovender at the very time she executed the note and deed of trust, and while substantially all of the testimony introduced by the defendant in error related to a time, either prior or subsequent to the time the note and deed of trust were executed, we think it was pertinent to the issue and sufficient to warrant the jury in rendering the verdict it did render. In other words, the Court of Civil Appeals having passed on the facts and found them sufficient, and these facts having been properly introduced, and having sufficient probative force to establish the fact in issue, the Supreme Court is without authority to disturb the conclusion reached by the Court of Civil Appeals.

The plaintiff in error contends that the use of the word "intelligently," rather than the use of the word "reasonably," in the charge of the court, explaining the phrase "mental capacity" as used in the issue to the jury, was such error as demands a reversal of the judgment rendered and the remanding of the case for another trial. Had the trial court told the jury that by the term "mental capacity" it meant that at the time of executing the note and deed of trust Minnie Lee Bovender must have had sufficient mind and memory to *reasonably* understand the nature and effect of her act in executing the note and deed of trust, we are of the opinion that an incorrect idea would have been given to the phrase "understand the nature and effect of her act," or, if not an incorrect idea, it would not have conveyed more clearly the idea sought to be conveyed than the word "intelligently" conveyed. The use of the word "intelligently" was unnecessary to express the idea, which the court sought to express, just as the word "reasonably" would have been unnecessary. The term "mental capacity," as used in the issue, meant that at the time of executing the note and deed of trust Minnie Lee Bovender must have had sufficient mind and memory to understand the nature and effect of her act in executing the instruments, and of course this really meant she must have had sufficient mental intelligence to understand the nature and effect of her acts. Even though the use of the word "intelligently" was error, we do not think it was calculated to mislead the jury to the detriment of the plaintiff in error, and, unless it had that effect, it would not constitute reversible error.

We have considered all of the assignments of error, and believing that none of them were well taken, but that the judgment of the Court of Civil Appeals, affirming that of the trial court, is correct, we recommend that the judgment of both courts be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals affirmed.